UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JAMES MENEAR, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

TATE & KIRLIN ASSOCIATES INC,

        Defendant.

Case No.: 19-cv-663

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed collection efforts into the District.

## PARTIES

3. Plaintiff James Menear is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, debts allegedly incurred for personal, family, or household purposes.

5. Defendant Tate & Kirlin Associates, Inc. ("TKA") is a foreign corporation with its principal offices located at 580 Middletown Blvd., Suite 240, Langhorne, Pennsylvania 19047.

6. TKA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others and incurred for personal, family, or household purposes.

7. TKA is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. TKA is a "debt collector" as defined by 15 U.S.C. § 1692a.

## FACTS

9. Sometime prior to February 26, 2019, Plaintiff contracted with LendingClub Corporation ("LCC"), a "peer-to-peer lending company" for an unsecured personal loan.

10. LCC issues consumer loans, using an internet-based matching system where private investors fund private borrowers' loans, with LCC assuming the role of the "bank" to facilitate and service the loans.

11. With respect to consumer loans such as the one at issue in this case, LCC enters into contracts with "WebBank," a Utah state-chartered industrial bank, which acts as a "pass through" funding agent. Although the consumer deals with LCC, WebBank "originates" the consumer loan.

12. Within days if not minutes of origination, WebBank transfers the note to LCC in exchange for LCC investors' funding and a portion of the loan origination fee.

13. With respect to the consumers, LCC acts as the creditor of these loans.

14. As a general rule, consumers who obtain loans from LCC do not deal with WebBank directly and never actually come into contact with WebBank.

15. On or about February 26, 2019, TKA mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

16. Upon information and belief, the alleged debt referenced by Exhibit A was incurred as the result of the extension of an unsecured consumer loan used only for personal, family, or household purposes.

17. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

18. Upon information and belief, Exhibit A is a form debt collection letter used by TKA to attempt to collect alleged debts.

19. Upon information and belief, Exhibit A was the first letter Defendant mailed to Plaintiff regarding this alleged debt.

20. The reverse side of the first sheet of Exhibit A includes the following notice which largely reflects the disclosures required by 15 U.S.C. § 1692g(a):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

21. The header in Exhibit A includes the following:

```
Original Creditor:   WEBBANK
Creditor:            CACH LLC
Previous Creditor:   LENDINGCLUB CORPORATION & LC TRUST I
Account Number:      xxx6426
TKA Account #:       ▉▉▉▉4244
Total Due:           $4,618.27
```

Exhibit A.

22. The body of Exhibit A contains the following:

> Our client has authorized us to offer a discount for 20% of your balance or $923.65 to satisfy this account. (Saving you $3,694.62)

Exhibit A.

3

Case 2:19-cv-00633-JPS   Filed 04/30/19   Page 3 of 12   Document 1

23. On its face, Exhibit A fails to state the name of the creditor to whom the debt is owed in a non-confusing manner.

24. Exhibit A states that, if the consumer submits a written request within thirty days of receipt, "this office will provide you with the name and address of the original creditor, if different from the *current creditor*." Exhibit A (emphasis added).

25. Exhibit A identifies an "Original Creditor" ("WEBBANK"), a "Creditor" ("CACH LLC"), and a "Previous Creditor" ("LENDINGCLUB CORPORATION & LC TRUST I"), but does not identify a "Current Creditor" or state which of the "Original Creditor," "Creditor," or "Previous Creditor" owns the debt.

26. Exhibit A also states TKA's "client" has authorized a settlement offer but does not actually state who that client is.

27. A debt collector does not disclose the identity of the creditor by naming an entity unless it clearly states that the named entity is the *current creditor* to whom the debt is owed. *E.g., Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016).

28. A vague reference in the header to an entity as a "Creditor" does not make clear to the unsophisticated consumer that this entity has purchased the debt outright, and is the only entity on whose behalf the collection agency is acting. *See, e.g., Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *3 (N.D. Ill. Oct. 20, 2011) (the "unsophisticated consumer might just as reasonably conclude that what she believed to be a single debt was now owed to two separate companies [the "creditor" and the "original creditor"].").

29. The potential for confusion is exacerbated in this case because Exhibit A names "WebBank" (a pass-through entity with whom Plaintiff never actually dealt) as the "Original

4

Creditor" and also confusingly states that "LendingClub Corporation & LC Trust I" is "Previous Creditor."

30. Moreover, it is unclear whether the reference to "LendingClub Corporation & LC Trust I" is a reference to two entities or one.

31. A debt collector states the name of creditor in a confusing manner if it represents that the debt's "original creditor" is one entity, a "previous creditor" is one or two other entities, and a "creditor" is a third entity, particularly where the consumer has never even dealt with most of those entities. *See, e.g., Dewees*, 506 F. Supp. 2d at 132-33 (statement that "The debt identified was sold by CHASE, all of your rights and obligations regarding this contract have been assigned to this office" did not clearly disclose the identity of the creditor); *Walls*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (stating an entity was the "Current Owner" of the debt did not identify the creditor clearly where the letter implied another entity could be the creditor); *Deschaine v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013) ("Naming an entity as 'Client' and a different entity as 'Current Creditor' especially where the 'Client' is named more often than the 'Current Creditor' plausibly could create confusion . . ."); *Aribal v. GMAC Mortg.*, 2013 U.S. Dist. LEXIS 105355, at *12-13 (N.D. Ill. July 29, 2013) ("although it identifies Partners as a creditor[,] the language suggests that another entity, namely, the recorded holder of the security deed, may also be a potential creditor."); *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3 (letter identifying LVNV as "creditor," but attempting to collect consumer's "delinquent CITIBANK account" did not disclose name of creditor because the "unsophisticated consumer might just as reasonably conclude that what she believed to be a single debt was now owed to separate companies . . . [which] might cause an unsophisticated consumer to be concerned about the possibility she was being defrauded or that she might pay

5

the incorrect creditor and continue to have outstanding debt."); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015) ("the inclusion of two entities who are willing to accept payment on the debt might lead an unsophisticated consumer to conclude that his debt was now owed to two separate companies . . . ."); *Taylor v. Alltran Fin.*, 2018 U.S. Dist. LEXIS 159862, at *9 (S.D. Ind. Sept. 19, 2018) ("Almost immediately after identifying LVNV as the 'Current Creditor,' the letter contradicts this by explaining that Alltran 'has been contracted' to collect on a judgment for Mr. Taylor's Springleaf account. An unsophisticated consumer receiving this information may well be confused or concerned that two separate companies (LVNV and Springleaf) may be seeking to collect on a single debt.") (citing *Braatz*, 2011 U.S. Dist. LEXIS 123118); *Wong v. Phelan Hallinan & Diamond, PC*, 2015 U.S. Dist. LEXIS 82986, at *14-16 (D.N.J. June 25, 2015) (plaintiff stated FDCPA claims where collection letter incorrectly identified loan servicer as creditor to whom the debt was owed); *Brinkmeier v. Round Two Recovery, LLC*, 2016 U.S. Dist. LEXIS 97664, at *14-16 (E.D.N.Y. July 25, 2016) (debt collection letter that identified one entity as the "Creditor" and another entity as "the legal owner" was confusing and misleading as to the name of the creditor).

32. As the Northern District of Illinois recently explained:

> Debt collectors have puzzled debtors with a variety of confusing terms in purporting to identify the current creditor. For example, some letters make confusing references to multiple non-creditor entities, rather than simply identifying the original creditor and the current creditor. Other letters use words that are ambiguous in reporting who is the *current* creditor. And still others state the name of the current creditor somewhere in the letter—but *without saying that the creditor owns the debt*.

*Zuniga v. Asset Recovery Solutions*, No. 17-cv-05119, 2018 U.S. Dist. LEXIS 51063, at *8 (N.D. Ill. Mar. 28, 2018) (citations omitted, emphasis added); *see also Dokes v. Ltd. Fin. Servs. L.P.*, 328 F. Supp. 3d 1270, 1278-80 (N.D. Al. 2018) (adopting *Zuniga*).

33. The unsophisticated consumer would not know which entity was the *current creditor*. *Cf., e.g., Zuniga*, 2018 U.S. Dist. LEXIS 51063, at *9 ("the letter plainly identified the

6

entity to whom the debt was owed by using the words "Current Creditor" right next to Bureaus Investment Group Portfolio No. 15 LLC."); *Dokes*, 2018 U.S. Dist. LEXIS 155908, at *28 n.9 ("the phrase 'current creditor,' rather than 'current owner' is more likely to alert a consumer that the identified entity is a creditor"); *Suellen v. Mercantile Adjustment Bureau, LLC*, 2012 U.S. Dist. LEXIS 98640, at *16 ("Mercantile's letter clearly names EAF as the 'current creditor' of the account, and the body of the letter states that the account is owed to EAF.").

34. Upon receiving Exhibit A, the unsophisticated consumer would not know whether Defendant's "client" was WebBank, Cach LLC, LendingClub Corporation, LC Trust I, or some other undisclosed entity.

35. Consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance; *see also FTC v. Swatsworth*, 17-cv-340-GCM, 2018 U.S. Dist. LEXIS 142696, at *17 (W.D.N.C. Aug. 22, 2018).

36. The confusing and misleading impressions are material to the consumer because because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice. *Janetos*, 825 F.3d at 324-25.

37. Plaintiff was misled and confused by Exhibit A.

38. The unsophisticated consumer would be misled and confused by Exhibit A.

7

## *The FDCPA*

39. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS

81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see alsoMogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

40. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

41. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

42. 15 U.S.C. § 1692e(2) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

43. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

44. 15 U.S.C. § 1692g(a)(2) requires that, within five days of the initial communication with a consumer, debt collectors provide written notice containing "the name of the creditor to whom the debt is owed."

## COUNT I – FDCPA

45. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

46. Exhibit A does not clearly identify the name of the current creditor to whom the debt is owed.

47. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692g(a)(2).

## CLASS ALLEGATIONS

48. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent adebt collection letter in the form of Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between April 30, 2018 and April 30, 2019, inclusive, (e) that was not returned by the postal service.

49. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

50. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

51. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

52. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

53. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

54. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 30, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)

Mark A. Eldridge (SBN 1089944)
Jesse Fructher (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com